UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**EMILY FULLER**,

      Plaintiff,

vs.

**TIFFANY AND COMPANY**,
a foreign for-profit corporation,

      Defendant.

_____/

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff EMILY FULLER, through undersigned counsel, sues Defendant TIFFANY AND COMPANY, a foreign for-profit corporation, and alleges as follows:

1.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.  This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to order Defendant's merchandise online.  This is also an action for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (her personal computer), and for compensatory damages to Plaintiff for such trespass.  Remedies provided under common law for trespass are not exclusive, and may be sought in connection with suits brought under the ADA.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331 and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief

pursuant to 28 U.S.C. §§ 2201 and 2202.  In addition, this Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

3.     Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.     Plaintiff EMILY FULLER is a resident of the State of Florida, resides within the Southern District of Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.     Plaintiff is and at all relevant times is visually disabled and suffers from alternating estropia; myopia, bilateral; and regular astigmatism, bilateral, a permanent eye disease and medical condition that substantially and significantly impairs her vision.   Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, accurately visualizing her world and adequately traversing obstacles.  As such, she is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*., and in 42 U.S.C. 3602, §802(h).

6.     As a result of her being visually impaired and disabled, Plaintiff cannot use the computer without the assistance of appropriate and available screen reader software.

7.     Defendant TIFFANY AND COMPANY is a foreign for-profit corporation authorized to do business and doing business in the State of Florida that is an American-based luxury jewelry and specialty retailer.  Defendant owns and/or operates over 100 retail stores throughout the United States, including the State of Florida.

8.     Plaintiff's vision disability limits her in the performance of major life activities, including sight, and she requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with her use of a computer.

9.      Plaintiff frequently utilizes the internet.  Due to the fact that she is significantly and permanently visually impaired, in order to effectively communicate and comprehend information available on the internet and access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.      At all times material hereto, Defendant was and still is an organization which owns and operates a nationwide chain of retail stores under the brand name "Tiffany and Company."  Each store is open to the public.  As the owner and operator of these retail stores, Defendant is defined as a "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.      By virtue of being a retail store open to the public, each of Defendant's stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.      Defendant controls, maintains, and/or operates an adjunct website called www.tiffany.com.  One of the functions of Defendant's website is to provide the public information on the various locations of Defendant's stores that sell its merchandise throughout the United States and within the State of Florida.  Defendant also markets and sells to the public its merchandise and goods through its associated website.

13.      Defendant's associated website also services its stores by providing information on its brands of merchandise, tips and advice, editorials, sales campaigns, and events, and other information that Defendant is interested in communicating to its customers.

14.     Since the website allows the public the ability to locate its stores and retail locations, and sells merchandise offered for sale by Defendant and delivered from or offered to be picked up at its stores and warehouse facilities, the website is an extension of Defendant's physical stores.  By this nexus, the website is characterized as a place of public accommodation per 42 U.S.C. § 12181(7)(E), and an extension of Defendant's brick and mortar locations and businesses.

15.     Because Defendant's website is a public store that is on-line, where the public can view and purchase Defendant's merchandise, the website is itself a sales establishment, which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the website must comply with all requirements of the ADA, and must not discriminate against individuals with disabilities and must not deny full and equal enjoyment of the services afforded to the public.

16.     At all times material hereto, Defendant was and still is an organization owning and operating the above-described website, www.tiffany.com.  Since the website is open through the internet to the public as a retail store and is a place of public accommodation under the ADA, Defendant, as the owner and/or operator of the website, is defined as a "public accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).  As such, Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

17.     Plaintiff is and has been a customer who is interested in purchasing Defendant's merchandise, which is offered at Defendant's physical stores and which is also offered and sold through Defendant's website.

18.     The opportunity to shop for Defendant's brand of merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually impaired individual is often a difficult, hazardous, and frightening experience.  Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually impaired individuals.

19.     Like most consumers, Plaintiff accesses several websites at a time to compare merchandise and prices. When shopping online, Plaintiff may look at several dozens of websites to compare features and prices.

20.     During the month of May 2017, Plaintiff attempted on several occasions to utilize Defendant's website to browse through the merchandise to educate herself as to the merchandise being offered and with the intent of making a purchase through the website.

21.     Plaintiff utilizes Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).  However, Defendant's website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: empty links, missing alt text for site images, and inconsistent keyboard interfacing with screen reader.

22.     Defendant's website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's merchandise from the website.

23.     Plaintiff attempted to locate an "Accessibility Notice" on Defendant's website which would direct her to a webpage with contact information for disabled individuals who have questions, concerns, or who are having difficulties communicating with the business.  However,

Plaintiff was unable to do so because no such link or notice was provided on Defendant's website.

24.     The fact that Plaintiff could not communicate with or within Defendant's website left her feeling excluded, as she is unable to participate in the same online shopping experience and access to merchandise as provided at the website and as experienced by the non-visually impaired public.

25.     Plaintiff continues to desire to patronize Defendant's website, but is unable to do so as she is unable to effectively communicate with Defendant due to her severe vision impairment.  Thus, Plaintiff, as well as others with vision impairments and disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's retail stores and its website, and the fact that the website clearly requires input from Defendant's retail stores for its operation and use, the website is a place of public accommodation subject to requirements of the ADA.

27.     On information and belief, Defendant has not initiated a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

28.     On information and belief, Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

29.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of the website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of the website by individuals with disabilities.

33.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually impaired.

36.     On information and belief, Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the www.tiffany.com website, applications, and digital assets accessible to the visually impaired community.

37.     On information and belief, Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility.

38.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its website to visually impaired individuals who want the safety and privacy of purchasing Defendant's merchandise offered on its website online from their homes.

39.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40.     Further, public accommodations under the ADA must insure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

41.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.  That mandate extends to internet shopping websites, such as the www.tiffany.com website.

42.     On information and belief, Defendant is, and at all times has been, aware of the barriers to effective communication within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend information presented therein.

43.     On information and belief, Defendant is aware of the need to provide full access to all visitors to its website.

44.     The barriers that exist on Defendant's website result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired, including Plaintiff.

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

46.     Notice to Defendant is not required because of Defendant's failure to cure the violations.  Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

**Trespass Violations**

48.     Plaintiff utilizes her personal computer to access websites such as the Defendant's www.tiffany.com website. Plaintiff uses her personal computer as a method of conveyance of her personal information.  Plaintiff thus stores her personal information and retains her browsing history on her personal computer.

49.     Throughout its website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits. Specifically, Defendant informs the website user that the user's personal information and browsing history is collected and is used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its website and commences to shop on that website is subject to having his or her personal information conveyed to third parties.  According to Defendant's website, those third parties include (but may not be limited to): (i) the Defendant's related affiliated companies (without so naming those other companies); (ii) service providers (without so naming the service providers); (iii) other third parties (without so naming the third parties); (iv) law enforcement officials (if so required to be transmitted by said law enforcement); and (v) to other third-party ad servers.

50.     Because of her severe visual impairment, Plaintiff was unable to comprehend Defendant's website; therefore, Plaintiff has had no choice, and likewise no knowledge, of Defendant's installation of data and information tracking software and the collection of the website user's browsing history and analytics placed on the user's computer.

51.     Based upon the review of Defendant's website, when a user accesses Defendant's website, Defendant installs software onto the user's computer, without the user's advance consent or knowledge.  It is also clear that Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

52.     As such, through its website, Defendant has committed a trespass against the Plaintiff, since the website places software on the Plaintiff's personal computer without Plaintiff's knowledge or consent.

## COUNT I – VIOLATION OF THE ADA

53.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

54.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the www.tiffany.com website, as defined within §12181(7)(E), and is subject to the ADA.

55.     Pursuant to 42 U.S.C. §12181(7)(E), www.tiffany.com is a place of public accommodation under the ADA because it provides the general public with the ability to purchase Defendant's merchandise online, and have those purchased items delivered to one's home or picked up from one of Defendant's retail stores.  Further, the website also serves to augment Defendant's stores by providing the public information on the various locations of the stores and to educate the public as to Defendant's available merchandise sold on the website and sold in its stores.

56.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

57.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

58.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

59.     Defendant's website must be in compliance with the ADA, but it is not, as specifically alleged hereinabove and below.

60.     As a result of the inaccessibility of Defendant's website, individuals with disabilities who are visually impaired are denied full and equal enjoyment of the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

61.     A sample review of just part of the Defendant's website reveals that the website is not functional for users who are visually impaired, including, but not limited to, the following:

a)  Empty links;

b)  Missing alt text for site images, and

c)  Inconsistent keyboard interfacing with screen reader.

*See*, Declaration and Curriculum Vitae of Robert D. Moody, attached as Composite Exhibit "A".

62.     More violations may be present on other pages of the website, which can and will be determined and proven through the discovery process in this case.

63.     Further, Defendant's website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the website's accessibility information and accessibility facts.

64.     There are readily available, well established guidelines on the internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.   Incorporating such basic components to make the website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

65.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to its website by individuals, such as Plaintiff, with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within Defendant's website are ongoing.

66.     The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

67.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.

§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70.     As alleged hereinabove, Defendant's website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71.     As a direct and proximate result of Defendant's failure to provide an ADA compliant website, with a nexus to its brick and mortar stores and physical locations, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of Defendant's website.

72.     As a result of the inadequate development and administration of the www.tiffany.com website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)   Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the www.tiffany.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website.

b)  Require Defendant to take the necessary steps to make the website readily accessible to and usable by visually impaired users, and during that time period prior to the www.tiffany.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the website for purposes of viewing and locating Defendant's stores and locations, and becoming informed of and purchasing Defendant's merchandise online, and during that time period prior to the website's being designed to permit individuals with visual impairments to effectively communicate, to provide an alternative method for individuals with visual impairments to effectively communicate for such goods and services made available to the general public through Defendant's website.

74.     Plaintiff is entitled to recover her reasonable attorney's fees, costs and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.  A declaration that Defendant's website is in violation of the ADA;

B.  An Order requiring Defendant to update its www.tiffany.com website to remove barriers in order that individuals with visual disabilities can access the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendant to clearly display the universal disabled logo within its website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.tiffany.com website;

D.  An order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.  An Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.  An Order directing Defendant to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually impaired;

G.  An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

H.  Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

75.     Plaintiff re-alleges paragraphs 1 through 52 as if set forth fully herein.

76.     Plaintiff's tangible personal property, being her computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's website, due to Defendant's employment of software analytics which are present on and through Defendant's website, which the Plaintiff has navigated.

77.     At all relevant times, Plaintiff did not consent to and was unaware that Defendant's website was placing software on her computer due to her inability to effectively communicate with and fully view and access the website.

78.     Plaintiff did not consent to the placement of tracking and information securing software on her personal computer; therefore, Defendant has committed a trespass against Plaintiff by placing such software on her computer without her knowledge or consent.

79.     By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass.

80.     Defendant's installation, operation, and execution of software on Plaintiff's computer has directly and proximately impaired the condition and value of the Plaintiff's computer, thereby causing Plaintiff damages.

81.     At the Defendant's website location, as part of its "Privacy Notice", Defendant states in pertinent part the following:



16

## Information We Collect

We may collect personal information about you in various ways, such as when you provide it at our stores, on our websites, through our apps and social media channels, at our events, through surveys, via text messages or on the telephone. The types of personal information we may collect include:

- - Contact information (such as name, postal address, email address, and mobile or other telephone number);

- - username and password;

- - payment information (such as your payment card number, expiration date, authorization number or security code, delivery address, and billing address);

- - purchase and transaction information;

- - customer service information (such as customer service inquiries, comments, and repair history);

- - photographs, comments and other content you provide;

- - information regarding your personal or professional interests, date of birth, marital status, demographics, and experiences with our products and contact preferences;

- - contact information you provide about friends or other people you would like us to contact; and

- - information we may obtain from our third-party service providers.

In addition, when you visit our websites, open our emails, use our apps or interact with Tiffany-related tools, widgets or plug-ins, we may collect certain information by automated means, such as cookies, web beacons and web server logs. The information we collect in this manner includes IP address, unique device identifier, browser characteristics, device characteristics, operating system, language preferences, referring URLs, information on actions taken on our site, and dates and times of website visits. A "cookie" is a file that websites send to a visitor's computer or other Internet-connected device to uniquely identify the visitor's browser or to store information or settings in the browser. A "web beacon," also known as an Internet tag, pixel tag or clear GIF, links web pages to web servers and their cookies and may be used to transmit information collected through cookies back to a web server. Through these automated collection methods, we obtain "clickstream data," which is a log of the links and other content on which a visitor clicks while browsing a website. As the visitor clicks through the website, a record of the action may be collected and stored. We may link certain data elements we have collected through automated means, such as your browser information, with other information we have obtained about you to let us know, for example, whether you have opened an email we sent to you. Your browser may tell you how to be notified when you receive certain types of cookies or how to restrict or disable certain types of cookies. Please note, however, that without cookies you may not be able to use all of the features of our websites or apps.

The providers of third-party apps, tools, widgets and plug-ins on our websites and apps, such as Facebook "Like" buttons, also may use automated means to collect information regarding your interactions with these features. This information is collected directly by the providers of the features and is subject to the privacy policies or notices of these providers. To the extent permitted by applicable law, Tiffany is not responsible for these providers' information practices.

This Global Privacy Notice does not govern the collection or use of the information you provide in connection with a Tiffany credit card account. We notify our charge account holders of our privacy practices annually, or as otherwise required by law. If you are a charge account holder, you annually receive our Privacy Notice to Tiffany & Co. Credit Card Account Holders by mail. The information you provide in connection with your Tiffany credit card account is managed solely pursuant to that notice.

## How We Use The Information We Collect

We may use the information described above to:

- - Provide products and services to you;

- - process your payments;

- - create and manage your account;

- - send you promotional materials and other communications;

- - communicate with you about, and administer your participation in, special events, contests, sweepstakes, programs, offers, surveys and market research;

- - respond to your inquiries;

- - operate, evaluate and improve our business (including developing new products and services; enhancing and improving our services; managing our communications; analyzing our products and customer base; performing data analytics; and performing accounting, auditing and other internal functions);

- - reduce credit risk and manage collections;

- - verify your identity;

- - protect against, identify and prevent fraud and other unlawful activity, claims and other liabilities; and

- - comply with and enforce applicable legal requirements, relevant industry standards, contractual obligations and our policies.

We also may use the information in other ways for which we provide specific notice at the time of collection.

In addition, we use information collected through cookies, web beacons, pixels, web server logs and other automated means for purposes such as (i) customizing our users' visits to our websites and apps, (ii) delivering content tailored to our users' interests and the manner in which our users

browse our websites and apps, and (iii) managing our websites, apps and other aspects of our business. To the extent required by applicable law, we will obtain your consent before collecting information using cookies or similar automated means.

We may use third-party analytics services on our websites and apps, such as those of Google Analytics, Adobe Omniture, and Sizmek. The analytics providers that administer these services use technologies such as cookies, web server logs and web beacons to help us analyze your use of our websites and apps. The information collected through these means (including IP address) may be disclosed to these analytics providers and other relevant third parties who use the information, for example, to evaluate use of the website or app. To learn more about these analytics services and how to opt out, please visit the relevant websites listed here:

- - Google Analytics: http://www.google.com/analytics/learn/privacy.html

- - Adobe Analytics: http://www.adobe.com/privacy/analytics.html#1

- - Sizmek: http://www.sizmek.com/about-us/privacy

## Interest-Based Advertising

On our websites and apps, we may collect information about your online activities for use in providing you with advertising about products and services tailored to your individual interests. We also may obtain information for this purpose from third-party websites on which our ads are served. This section of our Global Privacy Notice provides details and explains how to exercise your choices.

You may see certain ads on other websites because we engage third-party ad buying networks (such as Facebook, Rubicon and Twitter). Through such buying networks, we can target our messaging to users through demographic, interest-based and contextual means. We can track your online activities over time by collecting information through automated means, including through the use of third-party cookies, web server logs, pixels and web beacons. The networks use this information to show you advertisements that may be tailored to your individual interests. The information our ad networks may collect on our behalf includes data about your visits to websites that serve Tiffany advertisements, such as the pages or advertisements you view and the actions you take on the websites. This data collection takes place both on our websites and on third-party websites that participate in these ad networks. This process also helps us track the effectiveness of our marketing efforts. To learn how to opt out of this ad network interest-based advertising, click here. To the extent required by applicable law, we will obtain your consent before using your information for interest-based advertising.

## Information We Share

We do not disclose personal information we collect about you, except as described in this Global Privacy Notice. We may share personal information with service providers who perform services on our behalf based on our instructions. We do not authorize these service providers to use or disclose the information except as necessary to perform services on our behalf or comply with legal requirements. Examples of these service providers include entities that process credit card payments, manage and reduce our credit risk, verify information, fulfill orders, and provide web hosting, analytics and marketing services. We also may share your personal information within

the Tiffany Group worldwide and with our joint marketing partners for the purposes described in this Global Privacy Notice. In addition, unless you object by emailing us at privacy@tiffany.com, to the extent permitted by law, we may share information about you with other third parties for those parties' own purposes, such as to offer products or services that may interest you.

In addition, we may disclose information about you (i) if we are required to do so by law or legal process, (ii) to law enforcement authorities or other government officials, and (iii) when we believe disclosure is necessary or appropriate to prevent physical harm or financial loss, or in connection with an investigation of suspected or actual fraudulent or illegal activity. We also reserve the right to transfer personal information we have about you in the event we sell or transfer all or a portion of our business or assets (including in the event of a reorganization, dissolution or liquidation).

*        *        *

## Online Tracking and How We Respond to Do Not Track Signals

When you use our websites and apps, both we and certain third parties (such as our advertising networks, digital advertising partners and social media platforms) may collect personal information about your online activities, over time and across third-party websites. Certain web browsers allow you to instruct your browser to send Do Not Track ("DNT") signals to websites you visit, informing those sites that you do not want your online activities to be tracked. At this time, our websites and apps are not designed to respond to all types of DNT signals or similar mechanisms from browsers as there is no common, industry-accepted standard for doing so. Thus, information about your online activities may continue to be tracked on our site and used to maintain our website's functionality and for our own analytics purposes described in this Privacy Notice even if your browser sends us a DNT signal. However, when we recognize a relevant DNT signal, we aim to suppress the third-party tags that are used to recognize your computer once you navigate away from our site and which are used to present you with Tiffany advertisements. As noted, since there is no uniform standard for DNT signal recognition, we may update our policy and practice as new technologies and solutions emerge. As indicated in the "Your Rights and Choices" section above, we offer you certain choices in connection with the personal information we collect about you and our interest-based advertising activities.

        82.     Defendant's trespass to chattels, nuisance, and interference caused real and substantial damage to the Plaintiff as follows:

        a)  By consuming the resources of and/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

        b) By infringing on Plaintiff's right to exclude others from her computer;

        c) By infringing on Plaintiff's right to determine, as the owner of her computer, which programs should be installed and operated on her computer;

20

d)  By compromising the integrity, security, and ownership of Plaintiff's computer; and

e)  By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on her computer without notice or consent.

83.     Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands judgment be entered against Defendant for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.

DATED:  September 6th, 2017.

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: pduran@pelayoduran.com


By____*s/ Roderick V. Hannah*_____
        RODERICK V. HANNAH
        Fla. Bar No. 435384

By ____*s/ Pelayo M. Duran*_____
        PELAYO M. DURAN
        Fla. Bar No. 0146595